**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. M.C., a minor, by and<br>through his father and<br>next friend, TYRONE CAMPBELL; and,<br>2. TYRONE CAMPBELL,<br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>1. HOLLIS INDEPENDENT SCHOOL<br>DISTRICT NO. 66 OF HARMON<br>COUNTY, OKLAHOMA a/k/a HOLLIS<br>PUBLIC SCHOOOLS;<br>2. HOLLIS PUBLIC SCHOOL<br>BOARD OF EDUCATION;<br>3. JENNIFER MCQUEEN in<br>her Official Capacity; *and*<br>4. JENNIFER CASWELL,<br>　　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: `CIV-15-343-C`

**JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED**

## <u>COMPLAINT</u>

COMES NOW, Plaintiffs, M.C., by and through his father and next friend, Tyrone Campbell, and Tyrone Campbell individually, and by and through their attorneys of record, Clinton R. James of The Firm on Baltimore, PLLC, and Robert L. Wyatt IV of Wyatt Law Office, P.C., alleges and states as follows:

### 1. JURISDICTION AND VENUE

1.　　This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2.　　This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation,

1

custom or usage, of any right, privilege or immunity secured by the Constitution of the United

States or by any Act of Congress providing for equal rights of citizens or of all persons within

the jurisdiction of the United States; and any civil action to recover damages or to secure

equitable relief under any Act of Congress providing for the protection of civil rights.

3.      Title 28 U.S.C. § 1367 governs additional claims originating from the same set of facts or

circumstances and is within the original jurisdiction and form part of the same case or

controversy.

4.      Plaintiff brings this action pursuant to Title IX of the Education Amendments of 1972, 20

U.S.C. §§ 1681-1688, as more fully set forth herein.

5.      This is also an action to redress the violation of Plaintiff's constitutional rights under the

Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as all defendants reside

or resided in this district, and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

7.      Plaintiff M.C. is male and was a minor at all times during the facts alleged in this

complaint and required to attend school pursuant to the Oklahoma Statute 70 O.S. § 10-105.

8.      At all times Plaintiffs were residents of Harmon County, Oklahoma.

9.      At all material times M.C. was a student attending a middle school within the Defendant

Hollis Public School District.

10.     The Defendant School District is a public educational institution located in Harmon

County, Oklahoma and formally titled Hollis Independent School District No. 66 (hereinafter

"School District") of Hollis, Oklahoma, is an Oklahoma school district organized and existing

under the laws of the State of Oklahoma and has its principal office in Hollis, Oklahoma.  Hollis

2

Public Schools receive federal funding and are subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 - 1688.

11.     The Defendant Hollis Public Schools Board of Education, (hereinafter "School Board") and its members were, at all times relevant herein, responsible for policy making for the school district and were responsible for the approval of all hiring and firing decisions within the school district and ultimately accountable for the oversight of the students, teachers, and support staff in Hollis Schools.

12.     At all material times, Defendant Superintendent Jennifer McQueen (the "Superintendent") worked within Harmon County, Oklahoma.

13.     At all material times, the Superintendent was an agent of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer.

14.     Jennifer Caswell (formerly Jennifer Sexton) was a teacher and employee of the School District and was supervised by the Superintendent and School Board.

### III. BACKGROUND

15.     Upon information and belief, at all material times, the School District was receiving federal funding.

16.     The School District failed to implement and/or execute policies in regard to the events that resulted in the deprivation of M.C.'s constitutional, statutory, and common-law rights.

17.     The School District failed to ensure that all its employees were properly trained and supervised to perform their jobs.

18.     The School District is responsible for the acts and omissions of its employees except as it relates to Count II.

3

19.     Jennifer Caswell taught M.C. English for one period during his 8th grade year.

20.     On or about March 2014, a rumor perpetuated by other students began to circulate in the Hollis Secondary School that M.C. and Jennifer Caswell had engaged in sexual acts, specifically fellatio.  These rumors had no basis in fact at that time.

21.     The Superintendent heard of the rumors and placed M.C. into in-school suspension for one (1) week.  This suspension involved removing M.C. from Jennifer Caswell's English class but allowed M.C. to attend his other classes.  The Superintendent reported the suspension to M.C.'s father.

22.     Shortly thereafter, M.C. began to volunteer for the Little Miss Harmon County Pageant to be held on April 4, 2014.

23.     On or about April 4, 2014, M.C. was called into Jennifer Caswell's classroom with another student to assist with preparations for the pageant.

24.     While in the classroom, Jennifer Caswell turned off the lights and showed M.C. and another student a video.

25.     Eventually the other student left the classroom leaving M.C. and Jennifer Caswell alone together.

26.     While in the room alone with M.C., Jennifer Caswell began to describe her sex life to M.C.  Jennifer Caswell then moved M.C. to her desk in the classroom and began to perform fellatio on M.C.  Shortly thereafter, Jennifer Caswell demanded M.C. have vaginal intercourse with her in the classroom, which he did.  Said sex acts constitute sodomy and rape under Oklahoma Law (i.e., (1) the age of the victim who cannot lawfully consent; and (2) a teacher cannot lawfully have sex with a student).  When finished sodomizing and raping the 8th grader, Jennifer Caswell swore M.C. to secrecy regarding the sexual activity.

4

27.     Upon information and belief, two (2) other individuals witnessed the sexual assault of M.C. through the window of the classroom and reported the incident to an administrator of the School District.

28.     Upon information and belief, neither local law enforcement nor the Department of Human Services (DHS) was contacted concerning this sexual molestation (rape and sodomy) of a minor child as required by law.

29.     Upon information and belief, the following Monday morning, Jennifer Caswell was allowed to resign with the understanding she would keep her State teaching credentials intact and leaving her free to prey upon other unsuspecting children and to continue to victimize M.C.

30.     Upon information and belief, the State Department of Education was not notified of the allegations against Jennifer Caswell in order to determine her fitness to hold a license to teach the children of this State and was not notified of the reasons for her dismissal or separation from the Hollis ISD.

31.     The school superintendent Jennifer McQueen, the school principal, and the School Board failed to inform Tyrone Campbell, M.C.'s father, of any sexual activity or suspected impropriety between Jennifer Caswell and M.C.  The superintendent merely explained that Jennifer Caswell was dismissed because she had students in her classroom without supervision.

32.     Shortly after tendering her resignation, Jennifer Caswell called Tyrone Campbell and misrepresented what happened at the school stating only that she no longer worked there and would like to mentor M.C.

33.     As a result of the school system's failure to inform Tyrone Campbell, the Department of Humans Services, the State Department of Education, and local law enforcement of the rape and

sodomy of a minor child and student, Jennifer Caswell continued her pattern of sexual abuse of M.C.

34.     This abuse continued within the boundaries of the County of Harmon, State of Oklahoma.

35.     Over the next few months, Jennifer Caswell ingratiated herself with Tyrone Campbell, and established a regular presence at the Campbell household.  She often stopped by Tyrone's home to check on M.C. and his siblings when Tyrone Campbell was away tending to his duties as an overland trucker.

36.     During this period of time, Jennifer Caswell continued to rape M.C. in her residence, in her vehicle, and in a cabin owned by Gary Caswell, also located in Harmon County.

37.     Upon information and belief, on or about April 12, 2014, Jennifer Caswell enticed M.C. to visit her at her residence and raped M.C. in a bedroom inside of her home.

38.     Upon information and belief, between April 12, 2014, and April 25, 2014, Jennifer Caswell contacted and kidnapped M.C. from his home and drove him to a secluded location on Harmon County Road Northwest of Hollis in Harmon County wherein she raped M.C. in her vehicle at least four (4) times.

39.     Upon information and belief, on or about April 25, 2014, Jennifer Caswell did rape and sodomize M.C. in M.C.'s father's bedroom.

40.     Upon information and belief, between May 3, 2014, and May 19, 2014, Jennifer Caswell contacted and spirited M.C. from his home and drove him to a secluded piece of rural property owned by Gary Caswell at least three (3) times inside of her vehicle.  Jennifer Caswell raped M.C. at these locations each time.

41.     Upon information and belief, on or about May 20, 2014, Jennifer Caswell did abduct and rape M.C. by driving M.C. in her vehicle to a secluded location in Harmon County and raped M.C. by having vaginal intercourse.

42.     Upon information and belief, on or about May 22, 2014, Jennifer Caswell did abduct and rape M.C. in a secluded location south of Hollis in Harmon County, at or near South River Road on the south side of the South River Bridge inside of her vehicle.

43.     A friend informed Tyrone Campbell, still unaware of the rapes, that Jennifer Caswell was visiting his residence regularly while he was away for work.

44.     Without knowledge of the sexual abuse or relationship, M.C.'s father Tyrone Campbell arranged for M.C. to move to Mississippi for the summer to live with M.C.'s biological mother. At this time, Jennifer Caswell had not been exposed to M.C.'s parents as a sexual predator.

45.     Even after sending M.C. to Mississippi to get away from Jennifer Caswell, Jennifer Caswell traveled to Mississippi, where she absconded with M.C., taking him to a hotel and raping him again.

46.     The result of the multiple acts of sexual abuse, sodomy and rape has left M.C. withdrawn and quiet where he was previously an outgoing teenager.  M.C.'s grades have dropped significantly and his desire to participate in extracurricular activities has greatly reduced.  In-depth psychological examinations will need to be done to assess long-term damage.

47.     On December 23, 2014, Defendants were placed on timely notice of Plaintiff's tort claims in conformance with Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51 § 156, as evidenced by the Notice of Tort Claim and return receipt card received by Hollis Independent School District Board of Education, signed by Holly Gollihare, attached hereto as Exhibit 1.

48.     The Defendants took no formal action upon the Tort Claim Notice and, pursuant to Okla. Stat. tit. 51 § 157, this action is timely commenced as of March 26, 2015.

## COUNT I – VIOLATION OF TITLE IX AS TO DEFENDANT HOLLIS SCHOOL DISTRICT

Paragraphs 1 through 48 are incorporated by reference.

49.     The cover-up and rape of M.C. was so severe and objectively offensive that it deprived Plaintiff of educational opportunities and benefits provided by his public schooling.

50.     The Defendant School District created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

a.   Plaintiff was a member of a protected class;

b.   He was subjected to sexual harassment in the form of rape by a teacher;

c.   He was subjected to harassment based on his sex; and

d.   He was subjected to a hostile educational environment created by the School District's lack of policies and procedures and failure to properly investigate and/or report the rape.

51.      Defendant School District and its officials had actual knowledge of the rape and the resulting harassment Plaintiff suffered as a result of Defendant's failure to notify Plaintiff's father in a timely matter and consistent with state and federal law.

52.     Defendant School District acted with deliberate indifference by failing to inform Plaintiff's father of the rape and failing to report the rape to the Oklahoma Department of Human Services and/or to law enforcement officials.

53.     Defendant School District persisted in its action and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

54.     Defendant School District's failure to promptly and appropriately respond to the alleged sexual harassment resulted in Plaintiff, on the basis of his sex, being excluded from participation in, being denied the benefit of, and was subjected to discrimination in the District's education program in violation of Title IX.

55.     Defendant School District failed to take immediate, effective remedial or preventative steps to resolve, investigate, or prevent further sexual assaults and rapes and instead acted with deliberate indifference toward Plaintiff.

56.     Defendant School District engaged in a pattern and practice of behavior that failed to fully investigate, alert, and protect students from rape within the school district.

57.     Plaintiff has suffered emotional distress and psychological damage, his character and standing in the community has suffered as a result of the continued rape he was subjected to as a result of Defendant School District's failure to warn the Oklahoma Department of Human Services, law enforcement, and Plaintiff's father.

58.     WHEREFORE, premises considered Defendants School Board, School District, and the Superintendent's actions were the direct and proximate cause of M.C. being deprived of a safe and harassment-free educational environment.  As a result of Defendants' actions, M.C. has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

## COUNT II – 42 U.S.C. § 1983 VIOLATIONS AS TO DEFENDANTS HOLLIS SCHOOL DISTRICT AND SUPERINTENDENT

Paragraphs 1 – 58 are incorporated by reference.

59.     Under the Fourteenth Amendment, Plaintiff has the right to Equal Protection of the Law.

60.     Defendants School Board, School District, Superintendent and Caswell were state actors acting under the color of state law.

61.     Defendants denied Plaintiff his right to Equal Protection of the Law by:

a.   Failing to enact and implement adequate policies concerning sexual abuse of students by employees;

b.   Failing to supervise Caswell properly;

c.   Failing to report the sexual abuse to law enforcement;

d.   Failing to report sexual abuse to M.C.'s father;

e.   Failing to investigate Caswell's misconduct;

f.   Failing to report the rape to the Oklahoma Department of Human Services;

g.   Failing to adequately train and supervise the Superintendent and Caswell; and

h.   Exhibiting deliberate indifference to the rape of MC.

62.     The School Board has an unconstitutional custom or policy of:

a.   Failing to investigate criminal misconduct against students; and

b.   Failing to adequately train and supervise employees with regard to the investigation and reporting of rape of students.

63.     WHEREFORE, premises considered, Defendants School Board, School District, and the Superintendent's failings as described above resulted in M.C. suffering severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

**COUNT III – NELIGENCE - CREATION OF A DANGEROUS CONDITION**

Paragraphs 1 - 63 are incorporated by reference.

64.     Defendants School Board, School District, and the Superintendent created an unreasonably dangerous condition by not reporting the rape of a minor by a pedophile to the minor's father, law enforcement, and/or the Oklahoma Department of Human Services.

65.     This creation of a dangerous condition occurred through the Defendants School Board, School District, and the Superintendent's allowing Jennifer Caswell to resign without reporting the incident to law enforcement, the Oklahoma Department of Human Services, and/or M.C.'s father.

66.     The presence of a pedophile in the community is an unreasonably dangerous condition.

67.     The Plaintiff's injuries resulted proximately and directly from that dangerous condition.

68.     The dangerous condition created a reasonably foreseeable risk of the kind of harm that occurred to Plaintiff.

69.     Defendants negligently created the dangerous condition or had actual or constructive notice of the condition in time to protect against said condition and failed to do so.

70.     Defendants owed Plaintiff a reasonable degree of care in reporting rape of a minor to the appropriate state agencies, law enforcement, and/or to the parent of said minor child.

71.     Defendants breached the duty owed to Plaintiff in the following respects: :

        a.   Defendants failed to report the rape to the Oklahoma Department of Health, the Oklahoma Department of Education, law enforcement, and the child's parent;

        b.   Defendants knew or should have known a pedophile at large with a teaching certificate was not reasonably safe;

c.  In the exercise of ordinary care, Defendants should have known that children such as Plaintiff might be harmed;

d.  Defendants failed to use ordinary care to ensure others were warned of Jennifer Caswell's predatory sexual proclivities; and

e.  Defendant failed to make the dangerous condition reasonably safe or adequately warn of the condition by reporting the condition to M.C.'s father, the Oklahoma Department of Human Services, and/or law enforcement.

72.  WHEREFORE, as a direct and proximate result of Defendant School Board, School District, and the Superintendent's negligence, Plaintiff was raped repeatedly, causing him to suffer mental and emotional trauma.  As a result of Defendants' actions, M.C. has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

## COUNT IV – PREMISES LIABILITY

Paragraphs 1 – 72 are incorporated by reference.

73.  Defendant School Board failed to approve the holding of the Little Miss Harmon County Pageant on the Hollis School campus as evidenced by the publically available school board minutes.

74.  The rape of M.C. occurred due to Defendant School Board, Superintendent, and the School District's failure to properly staff, monitor or secure the facility during rehearsals for the Little Miss Harmon County Pageant.

75.  At a time prior to the rape that occurred at the Little Miss Harmon County Pageant, Defendants knew or reasonably should have known, given the previous rumors regarding sexual relations between M.C. and Jennifer Caswell that a dangerous condition existed.  The

Superintendent even went so far as to remove M.C. from Caswell's classroom for a week after receiving notice of rumors swirling around sexual impropriety.  By allowing children and school district employees to wander freely throughout the school building, Defendants created a dangerous condition that could have easily been avoided.

76.     WHEREFORE; M.C. claims that Defendants School Board, School District, and the Superintendent were the proximate cause of the abuse he suffered while visiting Defendants' premises as an invitee and M.C. is entitled to all actual and punitive damages. As a result of Defendants' actions, M.C. has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

## COUNT V – WRONGS AGAINST PERSONAL RELATIONS

Paragraphs 1 – 76 are incorporated by reference.

77.     This claim is brought against Jennifer Caswell individually by Tyrone Campbell.

78.     Throughout the course of the multiple incidents of rape referenced in Paragraphs 32 – 45, Jennifer Caswell did entice M.C. away from his father.

79.     Jennifer Caswell would contact M.C. and lure him away from his home and from the custody and care of his father to go into remote rural areas and places within Harmon County, Oklahoma late at night and sometimes during the day.

80.     This enticement interfered with Tyrone Campbell's rights of personal relation with his son pursuant to Oklahoma Statute 76 O.S. § 8.

81.     WHEREFORE, Tyrone Campbell claims that Jennifer Caswell is the proximate cause of his loss of personal relations with M.C. and is entitled to actual and punitive damages.  As a result of Defendant's actions, M.C. has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

## COUNT VI – SEXUAL BATTERY OF A CHILD

Paragraphs 1 – 81 are incorporated by reference.

82.     This claim is brought against Jennifer Caswell individually.

83.     Jennifer Caswell did physically touch and molest M.C. in a sexual manner by performing fellatio upon his person and by conducting vaginal intercourse with M.C.

84.     At the time of the rape, M.C. was a minor child unable to give consent.

85.     Jennifer Caswell intentionally touched with her mouth, hands, and vagina M.C.'s person on numerous occasions as previously detailed above.

86.     Jennifer Caswell acted intentionally and with a prurient purpose in mind during each instance of rape when she offensively touched M.C. in furtherance of the rape.

87.     WHEREFORE, Plaintiff M.C. states Jennifer Caswell was the proximate cause of his injuries arising from the multiple instances of sexual battery and is entitled to actual and punitive damages as a result.  As a result of Defendant's actions, M.C. has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Paragraphs 1 – 87 are incorporated by reference.

88.     This claim is brought against Jennifer Caswell individually.

89.     Jennifer Caswell conducted numerous intentional instances of rape against M.C. as she planned, seduced, and spirited M.C. away from his family on numerous occasions.

90.     Jennifer Caswell's conduct of sex with a minor, namely a student, was extreme and outrageous as well as criminally culpable.

91.     The rape suffered by M.C. is the cause of his mental anguish and withdrawal from daily life.  Prior to the rapes, M.C. was a normal and outgoing teenage male who had no prior issues in school or problems socializing.  Today, M.C. is withdrawn and socially stigmatized as a result of the national and international attention that has been brought to bear on him as a result of his being raped by teacher Jennifer Caswell.

92.     WHEREFORE, M.C.'s injuries were proximately caused by proximately by Jennifer Caswell's conduct and M.C. prays for actual an As a result of Defendant's actions, M.C. has suffered severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation and punitive damages as well as all other remedies available under law.

## PRAYER FOR RELIEF

93.     Plaintiffs respectfully request judgment in his favor and against Defendants as follows:

      a.   Compensatory damages including Plaintiff's physical damages as well as psychological and emotional distress;

      b.   Punitive damages (except as to Count II);

      c.   All other damages or relief deemed appropriate by the Court or jury;

      d.   Costs;

      e.   Reasonable attorney fees.

Respectfully Submitted,

**THE FIRM ON BALTIMORE, PLLC**

*s/ Clinton R. James*
Clinton R. James, OBA# 31106
1811 S. Baltimore
Tulsa, OK 74119
PH:  918-948-6171
Fax: 800-460-3446
clint@lawtulsa.com


**WYATT LAW OFFICE, P.C.**

*s/ Robert L. Wyatt, IV*
Robert L. Wyatt IV, OBA# 13154
501 N. Walker Ave., Suite 110
Oklahoma City, OK 73102
PH:  405-234-5500
Fax: 405-232-4556
bobwyatt@wyattlaw.com

*Counsel for Plaintiffs*

16