IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| M.C., a minor, by and through his father and next friend, TYRONE CAMPBELL, and TYRONE CAMPBELL, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-15-343-C |
| HOLLIS INDEPENDENT SCHOOL DISTRICT NO. 66 OF HARMON COUNTY, OKLAHOMA a/k/a HOLLIS PUBLIC SCHOOLS, et al., | ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiffs filed the present action asserting claims against Hollis Independent School District No. 66 of Harmon County, Oklahoma ("District"), Hollis Public School Board of Education ("Board") (collectively, the "School"), Superintendent Jennifer McQueen, Principal Marty Webb, and a former teacher, Jennifer Caswell. Plaintiffs allege the District violated Title IX, 20 U.S.C. § 1681(a), and assert a 42 U.S.C. § 1983 claim for violations of a minor's Fourteenth Amendment rights against the District, Board, McQueen, and Webb. Plaintiffs assert a negligence per se claim against McQueen and Webb. Plaintiffs also allege claims of enticement in violation of 76 Okla. Stat. § 8, battery, intentional infliction of emotional distress ("IIED"), and a § 1983 violation against Defendant Caswell.

Defendants filed a Motion for Summary Judgment (Dkt. No. 55) and Plaintiffs have responded. Plaintiffs filed a Motion for Summary Judgment (Dkt. No. 56) against

Defendant Caswell. Although the time to respond has passed, Defendant Caswell has neither filed a response nor sought additional time to respond. Both motions are now at issue and will be addressed herein.

## I. BACKGROUND

During the 2013-14 school year, Defendant Jennifer Caswell[1] entered into a sexual relationship with M.C., a minor and eighth grade student. Caswell was a teacher employed by the School. On March 11, 2014, a parent informed Principal Marty Webb that he had information regarding a sexual relationship between Caswell and M.C. According to the parent, M.C. admitted to having a sexual encounter with Caswell. Principal Webb and Assistant Principal Jared Robinson interviewed M.C. the same day. M.C. denied the allegations. M.C. repeated the denial after M.C.'s father, Plaintiff Tyrone Campbell, arrived at the school. Principal Webb and Assistant Principal Robinson interviewed other students who had supposedly also heard rumors of the relationship. It is disputed whether the parties concluded the rumors were false.

After the interviews, M.C. was removed from Caswell's class and spent the class period in the "in-school detention" room. M.C. returned to Caswell's classroom after about one week. On March 28, 2014, students reported to District officials that M.C. was spending time in Caswell's classroom outside of his assigned class time and the pair were whispering and giggling together. Caswell and M.C. denied these allegations when interviewed and the District issued Caswell a written reprimand regarding the report.

---

[1] Jennifer Caswell was known as Jennifer Sexton at the time these events transpired.

2

On April 4, 2014, M.C. was participating in an after-school event when supervisors noticed he was not at his assigned post. The supervisor found M.C. and Caswell in her dark classroom. District officials were contacted the same day and after surveillance video confirmed the allegations, District Superintendent Jennifer McQueen was prepared to place Caswell on administrative leave while the School conducted an investigation. Rather than take leave, Caswell resigned on April 7, 2014. Beginning April 7, Hollis police conducted an investigation where both Caswell and M.C. continued to deny the sexual relationship.

On April 10, 2014, Principal Webb received reports that M.C. and Caswell were seen driving together around town in the evenings and Caswell bought M.C. chewing tobacco from a liquor store. Principal Webb informed Campbell of this fact and Campbell was aware Caswell had been visiting M.C. at his house. After the conclusion of the school year in May, M.C. went to his mother's home in Mississippi where Caswell was later arrested after she traveled to Mississippi and took M.C. to a motel.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A. Standard of Review

Defendants moved for summary judgment on the Title IX, § 1983, negligence, and negligence per se claims. The standard for summary judgment is well established. Summary judgment may only be granted if the evidence of record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition

of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(c). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B. Title IX

The District argues for favorable judgment because Plaintiffs cannot prove a claim for relief under Title IX. Title IX, or 20 U.S.C. § 1681(a), provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Id. To be successful with the claim, Plaintiffs must show the District "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1246 (10th Cir. 1999) (citation omitted).

The actual knowledge element has been described by the Tenth Circuit as requiring the school to have "actual knowledge of a *substantial risk* of abuse to students based on prior complaints by other students." Escue v. N. Okla. Coll., 450 F.3d 1146, 1154 (10th Cir. 2006) (citation and internal quotation marks omitted). The prior complaints do not need to be "clearly credible" because the school official will come to know "that a school employee is a substantial risk to sexually abuse children." Id. (citation and internal

4

quotation marks omitted). For example, one complaint of a teacher making inappropriate comments is "plainly insufficient" to provide notice of a sexual relationship between a teacher and student. Id. (citation omitted). However, knowledge is likely achieved some time before the school district "receives a clearly credible report of sexual abuse." Id. (citation and internal quotation marks omitted).

On March 11, a parent who spent substantial amounts of time with M.C. reported to District officials that M.C. admitted to having a sexual relationship with Caswell. The parent stated he was concerned and thought M.C. was telling the truth. When questioned by District officials, M.C. denied any inappropriate contact with Caswell. Even if District officials concluded the rumors were false on March 11, their suspicion should have been heightened at the time the second report of misconduct was received. Certainly one report from a parent who questioned M.C., received an admission, and thought it was truthful, and an additional report from students that M.C. was spending time outside of class with Caswell and the pair were whispering and giggling is beyond a "plainly insufficient" report and approaching a "clearly credible report of sexual abuse."

Considering the two reports cumulatively, the Court finds there is a dispute of material fact regarding what knowledge the District officials obtained, and when. In resolving the disputed facts, a reasonable jury could conclude the District had actual knowledge of a substantial risk that Caswell was sexually abusing M.C. See J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29, 397 F. App'x 445, 452-53 (10th Cir. 2010) (concluding a reasonable jury could find a student report of inappropriate conduct gave the school district actual knowledge) (unpublished); Roof v. Newcastle Pub. Sch. Dist., No. 1-

5

1 of McClain Cty., No. CIV-14-1123-HE, 2016 WL 502076, at *4 (W.D. Okla. Feb. 8, 2016) (finding that a second allegation of inappropriate sexual conduct between student and teacher gave the district arguable actual notice). Defendants' Motion fails concerning the first element, and thus the Motion is denied on the Title IX claim.

C.  § 1983

Plaintiffs assert claims under 42 U.S.C. § 1983, stating the District, the Board, McQueen, and Webb violated M.C.'s Fourteenth Amendment substantive due process and equal protection rights. Defendants argue summary judgment should be granted because Plaintiffs failed to show the School violated either constitutionally protected right.

In violating M.C.'s substantive due process rights, Plaintiffs argue the Defendants should be liable under the danger creation theory. Generally, § 1983 provides that state entities may be liable only for their own acts, and the acts of third parties are excluded. See Robbins v. Oklahoma, 519 F.3d 1242, 1251 (10th Cir. 2008) (citation omitted). An exception to the general rule allows a plaintiff to prevail "only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." Id. (citation and internal quotation marks omitted). To be successful with a danger creation claim, a plaintiff must show:

> (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience.

Id. (citation omitted).

6

Plaintiffs argue that by failing to report the incidents to law enforcement, the Department of Human Services ("DHS"), or Campbell, thereby allowing the presence of a known pedophile in the community, Defendants created the danger that Caswell would continue sexually abusing M.C. after Caswell was terminated from her teaching position. (Am. Compl., Dkt. No. 26, pp. 12-13.) The Court agrees there is at least a question of fact regarding whether Defendants' actions created the alleged danger if Defendants were aware of the allegations as stated by Plaintiffs.

The Tenth Circuit has reasoned that a sexual relationship between a teacher and student, even while the teacher is still a state actor, is more like "private activity" for purposes of danger creation theory. See J.M. ex rel. Morris, 397 F. App'x at 458. It follows that the danger of an ex-teacher's actions are even more qualified for danger creation theory liability because a terminated teacher is no longer under state authority. Additionally, the Tenth Circuit has counseled that

> [t]he key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of [his] ability to defend [him]self, or cutting off potential sources of private aid. Thus the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's [acts] to occur.

Armijo By & Through Chavez v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1263 (10th Cir. 1998) (citation omitted).

Here, Plaintiffs allege Defendants used their positions to strip M.C. of aid from his father and other authorities that could have sheltered him from repeated sexual abuse.

7

Questions of fact remain regarding what was reported to Campbell and when, and when it would have been appropriate to report Caswell's activities to law enforcement based on the knowledge Defendants had at the time. Accordingly, summary judgment is denied.[2]

Plaintiffs also argue Defendants should be liable for violations of M.C.'s equal protection rights. A plaintiff may recover for violations of equal protection under 42 U.S.C. § 1983. The Tenth Circuit has stated "sexual harassment by a state actor can constitute a violation of the equal protection clause." Murrell, 186 F.3d at 1249 (citing Starrett v. Wadley, 876 F.2d 808, 814 (10th Cir. 1989)). To be successful with a claim against a school district, "a plaintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." Id. (citation omitted). The municipal policy in question must be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." Id. (citations and internal quotation marks omitted) (alteration in original). If no official policy is in place, the municipality "may also be held liable if the discriminatory practice is so permanent and well settled as to constitute a custom or usage with the force of law." Id. (citation and internal quotation marks omitted).

---

[2] Plaintiffs argue Defendants negligently created a dangerous condition when they failed to timely inform Campbell, DHS, or law enforcement of the relationship between Caswell and M.C. This could be construed as a negligence claim. The elements of negligence are "1) a duty of care owed by defendant to plaintiff, 2) defendant's breach of that duty, and 3) injury to plaintiff caused by defendant's breach of that duty." Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶ 12, 160 P.3d 959, 964 (citations omitted). Because the disputed material facts needed to determine duty and breach are similar to those in danger creation theory, the negligence claim, if present, will not be summarily dismissed.

Here, Plaintiffs show there was a written policy requiring all School employees to report suspected child abuse or neglect to DHS. (School Policy, Dkt. No. 65-16.) Plaintiffs argue District officials had a discriminatory practice of violating the policy, if teacher abuse occurred, by ignoring the abuse until the teacher resigned.

Because there is no written discriminatory policy, Plaintiffs must show the District had a discriminatory practice in place that was "so permanent and well settled as to constitute a custom or usage with the force of law." Murrell, 186 F.3d at 1249 (citation and internal quotation marks omitted). However, Plaintiffs provide no evidence of this practice other than the facts of this case, where District officials did fail to notify DHS. The Tenth Circuit has stated "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability" unless it also includes proof the incident was "caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993) (citations omitted). Again, Plaintiffs offer no evidence. Accordingly, the Court finds no dispute of material fact and Defendants are entitled to judgment as a matter of law.

D. Qualified Immunity

Defendants argue McQueen and Webb are entitled to qualified immunity as government actors. In order to overcome the defense of qualified immunity, Plaintiffs "must establish that the defendant[s'] conduct violated a federal constitutional or statutory right and that the right was clearly established at the time of the conduct." Hulen v. Yates, 322 F.3d 1229, 1237 (10th Cir. 2003) (citations omitted). If Plaintiffs fail to establish either

9

prong, the Defendants will prevail on the defense. See A.M. v. Holmes, 830 F.3d 1123, 1134-35 (10th Cir. 2016), pet. for cert. docketed (Feb. 8, 2017).

As stated above, there is a question of fact regarding whether McQueen and Webb violated M.C.'s substantive due process rights. Therefore, the Court will determine whether the right was clearly established at the time of the conduct. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & Cty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992) (citation omitted) (overruled on other grounds by Morris v. Noe, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012)).

Plaintiffs cite only one case in response to the qualified immunity defense. The quoted language includes the statement:

> In this circuit[,] it has been clearly established since our holding in 1989 in *Starett*, [876 F.2d at 814,] "that ["]sexual harassment [. . .] can violate the Fourteeth [sic] Amendment right to equal protection of the laws." [*See Woodward*, 977 F.2d at 1398.] Moreover, it has been clearly established since [at least] 1992 that a person who exercises the state's supervisory authority may be held liable for conscientiously [sic] acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority.

(Pls.' Resp. to Mot. for Summ. J., Dkt. No. 65, p. 31) (quoting Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1251 (10th Cir. 1999)). This is not a successful citation to a case clearly establishing danger creation liability under the Fourteenth Amendment. Plaintiffs' danger creation claim states the danger was that Caswell would continue to abuse M.C. after she was terminated, caused by a lack in Defendants' reporting; this is not

10

a conscious acquiescence by Defendants over a non-state actor over whom Defendants have authority as Murrell mentions. Accordingly, the Court must grant qualified immunity to McQueen and Webb on the danger creation claim.

E. Negligence Per Se

The Plaintiffs bring a negligence per se claim against McQueen and Webb. Plaintiffs argue Defendants violated 10A Okla. Stat. § 1-2-101 by failing to report suspected sexual abuse to DHS. The Oklahoma Supreme Court has set out the elements of negligence per se: "(1) the injury must have been caused by the violation; (2) the injury must be of a type intended to be prevented by the ordinance; and (3) the injured party must be one of the class meant to be protected by the ordinance." Hampton By & Through Hampton v. Hammons, 1987 OK 77, 743 P.2d 1053, 1056.

Defendants argue they did not violate the statute, and the Court agrees. The statute in question imposes the duty that "[e]very person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter promptly to the Department of Human Services." 10A Okla. Stat. § 1-2-101(B)(1). "Abuse" is defined as "harm or threatened harm to the health, safety, or welfare of a child by a person responsible for the child's health, safety, or welfare, including but not limited to nonaccidental physical or mental injury, sexual abuse, or sexual exploitation." 10A Okla. Stat. § 1-1-105(2). Further, a "[p]erson responsible for a child's health, safety, or welfare" is defined as

> a parent; a legal guardian; custodian; a foster parent; a person eighteen (18) years of age or older with whom the child's parent cohabitates or any other adult residing in the home of the child; an agent or employee of a public or

11

private residential home, institution, facility or day treatment program as defined in Section 175.20 of Title 10 of the Oklahoma Statutes; or an owner, operator, or employee of a child care facility as defined by Section 402 of Title 10 of the Oklahoma Statutes[.]

10A Okla. Stat. § 1-1-105(51). Therefore, at the time McQueen and Webb suspected Caswell was sexually abusing M.C. they were under no obligation to report to DHS because neither McQueen, Webb, nor Caswell were a "[p]erson responsible for a child's health, safety, or welfare" as defined by Oklahoma's Children and Juvenile Code. The undisputed facts show Defendants are entitled to judgment as a matter of law and the Motion is granted on this claim.

### III. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

A. Standard of Review

Plaintiffs moved for summary judgment on the enticement, IIED, and battery claims. Defendant Caswell failed to either submit a timely response to the Motion for Summary Judgment or request an extension. The Tenth Circuit has stated the procedure to be followed in this circumstance:

> To summarize, a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is "appropriate" under Rule 56. Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.

Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002) (citations omitted). Accordingly, the Court will evaluate whether the facts entitle Plaintiffs to judgment as a matter of law.

B. Enticement

Plaintiffs assert a claim against Caswell pursuant to 76 Okla. Stat. § 8 which states "[t]he rights of personal relation forbid . . . [t]he abduction or enticement of a child from a parent." The Oklahoma Supreme Court recognized the tort of abduction or enticement in Zaharias v. Gammill, 1992 OK 149, 844 P.2d 137, 138-39 (stating the tort is derived from the Second Restatement of Torts). The Restatement defines the tort as "[o]ne who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody . . . , is subject to liability to the parent." Restatement (Second) of Torts § 700 (1977).

The undisputed facts show Caswell asked M.C. to sneak out of the house while M.C.'s father slept. Caswell often picked up M.C. a short distance away from the home. The meetings often occurred late at night and Caswell was "a little bit sneaky" because she did not want to be seen with M.C. (Depo. of M.C., Dkt. No. 56-1, pp. 5-7.) No reasonable finder of fact would conclude that Caswell did not know she lacked Campbell's consent to take M.C. from his home when she acted with such secrecy. It is not disputed that M.C. was a minor and under Campbell's legal custody. The Court finds Plaintiffs are entitled to judgment as a matter of law.[3]

---

[3] Plaintiffs argue the Court should draw a negative inference from Caswell's use of her Fifth Amendment privilege. See Baxter v. Palmigiano, 425 U.S. 308 (1976); Allstate Ins. Co. v. Savage, No. CIV-04-535-L, 2005 WL 1331087, at *8 (W.D. Okla. June 2, 2005). However, the questions presented in the affidavit and sur-reply are not material or necessary to the Court's

13

C. Intentional Infliction of Emotional Distress

Plaintiffs bring an IIED claim against Caswell in her individual and official capacities. The undisputed facts state M.C.'s emotional distress resulted in "a drop in his grades, loss of energy, and social anxiety." (Pls.' Mot. for Summ. J., Dkt. No. 65, p. 11.)

The elements of an IIED claim are "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Computer Publ'ns, Inc. v. Welton, 2002 OK 50, ¶ 7, 49 P.3d 732, 735. The trial court is charged with acting as gatekeeper in regard to the outrageousness of defendant's conduct. In fact, "[o]nly when it is found that reasonable people would differ in an assessment of this central issue may the tort of [IIED] be submitted to the jury." Miller v. Miller, 1998 OK 24, ¶ 34, 956 P.2d 887, 901. To meet the burden, Plaintiffs must show that "the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and would lead the listener to exclaim 'Outrageous!'" Welton, 2002 OK 50, ¶ 9, 49 P.3d at 735 (citation omitted).

Viewing the facts in the light most favorable to the nonmoving party, the Court finds that Caswell's actions are intentional and sufficiently outrageous,[4] but the evidence of M.C.'s emotional distress presented at this time is not sufficient to grant summary

---

analysis of any issues present in the Motion against Caswell. Plaintiffs present no arguments regarding why the Court should apply the inference to claims against the School.

[4] See Elizabeth S. v. Okla. City Pub. Sch., No. CIV-08-105-M, 2008 WL 4147572, at *4 (W.D. Okla. Sept. 3, 2008) (finding that a teacher forcing a student to have oral sex is extreme and outrageous conduct for purposes of IIED).

14

judgment. See Restatement (Second) of Torts § 46 cmt. j (1965) ("[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it"). The jury will be permitted to evaluate Caswell's conduct and the extent of M.C.'s emotional distress. Plaintiffs' request for summary judgment on the IIED claim is denied.

D. Battery

Plaintiffs bring a battery claim against Defendant Caswell in her individual and official capacities. Oklahoma does not recognize a sexual battery cause of action; the common law battery claim allows for complete recovery. See Brown v. Ford, 1995 OK 101, 905 P.2d 223, 230 (overruled on other grounds). Oklahoma follows the definition of battery that imposes liability (1) if an actor intends to cause a harmful or offensive contact with another person and (2) a harmful contact with the person results. Restatement (Second) of Torts § 13 (1965); see also Brown, 1995 OK 101, 905 P.2d 223, 229 n.34.

The undisputed facts show Caswell induced a minor to have oral sex and intercourse. Caswell's actions are presumed to be intentional. See Restatement (Second) of Torts § 8A (1965). There is also little doubt that such contact is harmful, as evidenced by its criminal nature and the fact that consent of the minor offers no defense. See 21 Okla. Stat. § 1111; Arganbright v. State, 2014 OK CR 5, ¶ 28, 328 P.3d 1212, 1218 (stating "the Legislature has set the age of consent for sexual activity at 16 years of age"). Caswell has not raised any other defenses. Accordingly, Plaintiffs are entitled to judgment as a matter of law on their battery claim against Caswell in her individual capacity.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment (Dkt. No. 55) is GRANTED in part and DENIED in part. Plaintiffs' Motion for Summary Judgment Against Defendant, Jennifer Caswell (Dkt. No. 56) is GRANTED in part and DENIED in part. The following claims remain for trial (1) Title IX claim against the District; (2) § 1983 substantive due process claim against the District and the Board; (3) § 1983 claim against Caswell; and (4) IIED claim against Caswell. A separate judgment shall issue at the conclusion of the case.

IT IS SO ORDERED this 23rd day of March, 2017.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge